Good morning. May it please the Court, I am Attorney Robert Barnes. I represent the appellants, Peta Lindsay, the Peace and Freedom Party, and Richard Becker. In 2012, Peta Lindsay and the Peace and Freedom Party and Richard Becker wanted to submit her name to be nominated as a potential nominee of the Peace and Freedom Party for the Presidency of the United States. But she's clearly ineligible for that office. That would be a decision for Congress to make. And that is our assertion here. Because what happened here is, in fact, the procedural history is such that she submitted it. The Election Code 6041 provides that the Secretary shall place a candidate on the ballot if they're generally recognized as a candidate. It was unquestioned that she was generally recognized as a candidate. The Secretary then took the position, initially just denied it, did not know on February 6th. After court proceedings began, the Secretary said that the reason was because of age. But the only document they could cite was something that was one week after the Secretary had actually made her decision. But independent of that, the key question here is whether the Secretary of State has the authority to interpret. There's no dispute that she is underage, underage in terms of the constitutional standards. She is or was at that time less than 35, right? Yes, Your Honor, that is correct. Okay, so you said something in the beginning that sounded like you were disputing. But you're not disputing that. I'm not disputing that fact, Your Honor, no. Okay. What we are disputing is the Secretary's authority to be the person to adjudicate, interpret, and enforce the qualifications provisions of the U.S. Constitution. But you mentioned something about the role of Congress in your response. Yes, Your Honor. The Constitution carefully creates a system whereby any dispute about the qualification of a person to hold the office of the presidency is determined by the 12th Amendment, the 20th Amendment. What does it say about exclusive? The interpretation of it being exclusive is that Congress is the one that it's been delegated to. The question of whether another State official can act in that capacity is definitely a novel question. Now, in the context of adding qualifications, this Court determined in Schaefer v. Townsend that the California State Legislature cannot add qualifications to what was explicitly delegated to Congress. In the term limits case, it was determined that no additional qualifications could be added and that the Elections Clause gave Congress the preemptive right to elect. But this is not an addition. This is a qualification that's in the Constitution itself. It is, Your Honor. But, for example, could the State of Arizona, which passed legislation or attempted to pass legislation that said a candidate had to have certain forms of documentary proof in order to meet the qualifications provision, would that statute be constitutional? In fact, many reasons. That's a hypothetical question we don't need to deal with, because in this case, if you were saying, look, there's no proof that she is less than 35 and we're disputing the California's requirement that she prove up that she's less than 35, then we'd have that question. But we don't, because you already said you don't dispute she's less than 35. So how the Secretary came to that knowledge or what procedures she used or whether she could use any procedures is not before us. It's not something we need to decide right now. The key question is whether she has this authority in general. For example, in the instance of both the Robinson case and Robinson v. Bowen in the Northern District of California and in the California Appeals Court case in Keysburg. I take it you can determine that it's a person, like somebody ran a dog for president. She would have a, I mean, let's say some party, not the Peace and Freedom Party, but some party nominated a dog for president. I take it the Secretary of State would have authority to keep that off the ballot, right? I believe that, too, would be submitted to Congress. And the reason for that is this, because let's take the logical conclusion the other way. In the McCain case, it was undisputed that Senator McCain was not born inside the United States. One interpretation of the natural born provision of the clause of the Constitution was that required was required. Under the Secretary's interpretation, a future Secretary of State could have excluded Senator McCain from the ballot on her interpretation and application of that provision. For example, in the very birther laws that were being passed and still being considered by states across the country, they were going to require certain forms of documentation that it was undisputed that Senator Obama and then President Obama would not have been able to meet. Under this interpretation of what the district court allowed, a state official anywhere in the country could have excluded Mr. Obama from the ballot on the grounds that the interpretation of the natural born clause provision, he didn't suffice to meet a documentary proof. There's also another provision of the presidential provision. But, again, that's a question we would have if there are disputes now as to whether or not she meets the constitutional standard. But in this case, she doesn't dispute it. So, you know, if she said, look, 35 doesn't mean 35. 35 means 34 or 32, you know, for whatever reason. But she doesn't dispute it. She admits she doesn't meet the constitutional standard. She doesn't meet the standard to hold the office of presidency. I believe she does meet the standard to be president-elect. The 20th Amendment provides for a provision where it says if a president-elect does not. But that's different, right? From the McCain situation, right? Because of the birth, I mean, the examples you gave, those are all disputes about whether somebody meets the constitutional standard. But in this case, you've sort of given that up. You've said we admit she does not have the requirements under the Constitution to be president. So all these mechanics about, you know, what the state can do to figure that question out, not before us. No, but what is before us is whether the Secretary of State has the authority to make that determination. Well, let me ask you. Both the analysis conducted in the district court and the State's brief rely on case law discussing codified election regulations or laws, I'm just curious, does the analysis change because Ms. Bowen was not acting pursuant to certain election law but under her discretion? Do we have to use the same test? I think the case is Anderson and Burdick, that those cases set out some tests. Do we use those tests? Your Honor, here I would say the Secretary of State has a higher burden because the California State legislature has never authorized this for her. Now, they've never said unless a candidate is age 35, they're not allowed to be a candidate for presidency of California. No such law has actually been passed by the State of California.  She can interpret it, adjudicate it, and enforce it wherever she wants. Today we face these particular facts, but tomorrow we may face an entirely different set of facts. Well, what's the harm? Is there any harm for your client, the Peace and Freedom Party, when it has to place on the ballot candidate who is 35 and older versus someone who's 27 years of age? Yes, Your Honor, because they're not being allowed the opportunity to have that issue or question if she were to be elected, submitted to Congress, and be submitted. And the 20th Amendment anticipates that someone can be a candidate for presidency, be qualified to be a candidate for presidency, and not be qualified to yet hold the office. Hence, the 20th Amendment says someone who has not qualified but may at some future point qualify. That clearly applies to someone that wouldn't fit the natural-born citizen provision. It likely wouldn't be the 14-year resident provision, which, by the way, that would be another provision. Election officials across the state could start to interpret, different states in the country, provisions that could have excluded Eisenhower and other people from the presidential ballot if we're going to allow state officials to now interpret, adjudicate, and enforce constitutional qualification provisions for the presidency. So here, because she wasn't, what happens when a young candidate, for example, in the past, California has allowed underage candidates on the ballot or people who didn't qualify for office on the ballot. For example, in state legislative race cases, including in Leland, 127-P-643, McGee, 226-P-2-1, Fuller, 138, California Reporter 3rd, 396, a person was clearly not a resident and didn't meet the residency qualifications to be run for California legislative office. It was challenged. The court said that neither the Secretary of State, nor the county official, nor the courts could determine whether or not that person was qualified. Qualifications of an elected official are best left to the elected body for a lot of very good and sound reasons. It may be easy to say, well, this age one is a simple one, so let's let it open, let's open up Pandora's box just a little bit and see how it goes. But once it gets open, all those other qualifications are going to come into question and state officials are going to start serving. Scalia. What about segregating the obvious disqualification from those that are marginal, such as you've suggested, the birther issue and so forth, where it's clear that age is expressed in the Constitution, what's the problem? I think the problem is that it always should be like the residency issue. Here there were several residents. Well, I can understand. Residency, room for discussion. But when it's age, and this person was at that time 8 years below eligibility. Two different reasons, Your Honor. First, I think the 20th Amendment provides for an underage president to be elected and not hold office. It allows the vice president instead or Congress to make a determination until they're qualified. It's almost the only reasonable. But she's not running for vice president. No, she isn't. But she would usually have a ticket and the vice president would be elected. So they anticipated this possibility and they left it to the public and to Congress to make a decision. And that's the best place to do it. Once we open the door and say executive officials can start to interpret the Constitution and apply it, even if it may seem simple and elementary. It's one thing to say that they may have anticipated the problem is arising. It's another thing to say that they're the only ones who have authority to deal with it. It's not clear to me why. Say, well, look, if a state were to nominate somebody who's underage and they were to get elected, then Congress has tools to deal with it. But what precludes, what makes that exclusive remedy? Why can't state officials anticipate along the way and say, look, we don't want to create these kind of problems. We don't want to have a candidate from our state who gets disqualified, who we know will get disqualified because. With the district court in the Northern District of California in the Robinson case, William Alsop determined was that because it was the kind of question that should always be submitted to an elected body, at a minimum, that elected body should have the first choice. And given the 12th and 20th Amendments' role in a Federal election, that it's too risky to give a state official any role in that process. The California Court of Appeals in Keyes v. Bowen went further, where they said, quote, it would be a truly absurd result if every state election official could determine the qualifications of the criteria or whether they meet the eligibility criteria of the presidency. I would note the Secretary of State actually urged that position before the California Court of Appeals in 2010, when it was served its interest to do so. Here, there would be a second question, independent of that first one, about whether or not the Secretary of State should be afforded this power or is constitutionally or is under California legislation. And the answer is, here, the only person the Secretary of State has ever asserted this authority concerning has been two candidates of the Peace and Freedom Party, Eldridge Cleaver in 1968 and this candidate in 2012. Both of them were African-American candidates for small parties. She has never asserted this power or this authority in any other context. We asserted that that raised an equal protection question, at least worthy of doing discovery, as to what the Secretary of State's actual motivation was. In 2007, there would have been March Fong Yu, probably. Who was the Secretary of State then? It was the same. In 2010, in 1968, it was a different Secretary of State, Your Honor. Probably March Fong Yu, right? She was Secretary of State forever. That's true, Your Honor. Okay. Thank you. You're out of time. I'm going to reserve my last two minutes if I can for it. You have minus two minutes. I'm already past it. Sorry. My apologies. Thank you, Your Honor. We'll hear from the Secretary. May it please the Court. Alexandra Robert Gordon from the Office of the California Attorney General for Appellees, Secretary of State, Deborah Bowen. So just to remind the Court of the procedural posture of this case, this is an appeal from a dismissal of plaintiff's complaint with prejudice. So there are really only two questions before the Court. Did plaintiffs meet their pleading burden? Does the complaint state claims for relief under the First and Fourteenth Amendments, the Equal Protection Clause, or the Twentieth Amendment? And two, could plaintiffs state claims under these provisions as a matter of law? And since the answer to both of these questions is no, the district court should be affirmed. Just to sort of touch briefly on some of the things that counsel has said, as the Court has noted, it is undisputed that at the time that she was running in 2010, Ms. Lindsay was 27 years old, and a person under the U.S. Constitution has to be 35 to be President of the United States. Although plaintiffs maintain that the Secretary of State does not have the authority to exclude Ms. Lindsay from the ballot, that's wrong as a matter of law. As a matter of State or Federal law? Actually, as a matter of both, Your Honor. The Supreme Court has made it clear in cases such as Storer v. Brown, for example, that election – State election officials and the Secretary of State is the chief elections official of the State of California, and under the government code, she has the power to make sure that all of the State election laws, as well as the Federal election laws, are enforced. States maintain a lot of discretion over elections generally in the U.S. Constitution and over the ballot, and the Supreme Court has made it clear that a State official certainly can protect the integrity of the electoral process by not clogging the ballot with frivolous candidacies. Well, suppose you had a Secretary of State that was part of the birther movement and declined to let Barack Obama on the ballot. What then? Well, Your Honor, that's a different question. Why? Why is it a different question? Because I think we can all agree that whether or not President Obama is a U.S. citizen is very much in dispute. There's no dispute here that Ms. Lindsay is 27 years old. And so what the courts have said in the cases that plaintiffs have cited, Keyes and Robinson, is that the Secretary of State has – they've said two things. One, the Secretary of State has no ministerial duty to investigate the qualifications. So in all these cases where they're alleging that President Obama or Senator McCain is not a U.S. citizen and she should – the Secretary of State should get verification or he's using a forged birth certificate, the Secretary of State has no ministerial duty to investigate. And it is, in fact, committed to Congress to resolve disputes about a candidate's qualifications. However, it's a stretch to say that the Constitution gives to Congress the sole ability to resolve disputes about qualifications and then say that, for example, if a party wanted to run a dog on the ballot, that that would go to Congress, that a State election official couldn't say, my goodness, this is not a human or this party would like to put an inanimate object on the ballot. Well, opposing counsel suggests that she might qualify as President-elect. What's your response to his argument? My response to that argument is that I suppose she could qualify as President-elect until such time, I guess, as someone made an objection, found out she wasn't qualified, and then she's not qualified to be President. So I'm not sure that that sort of changes the legal analysis about whether or not a State official can keep someone who's manifestly and admittedly unqualified off the ballot. So it doesn't matter that the California Code, Elections Code, states very clearly that the Secretary of State shall place the name of a candidate upon the peace and freedom party presidential preferential ballot and so on. You're saying that despite that language or any other codified law statute or anything like that, the Secretary of State's discretion is enough. What's the authority? Just the discretion is enough? Right. So the authority is, first of all, so in Keyes v. Bowen, a case that plaintiffs have cited today and we've cited in our brief, the Court made clear that under the provision, it's actually the Democratic primary provision, but it's identical to the peace and freedom, that the Secretary actually does maintain some discretion to exclude people from primary ballots, but not from the general election ballots. And although it's not really explained why that's the case, and this is beyond the scope of the briefing, but I will answer it, under California's or the California Supreme Court's interpretation of shall, shall is not always mandatory. Shall is construed by looking at the statutory scheme as a whole and where the statutory scheme calls for an exercise of discretion, which it does here. For example, even to determine whether a candidate is generally recognized calls for an exercise of discretion. Shall is not construed to be mandatory and still allows for an exercise of discretion by an official. And I'm happy to cite some cases if you would like them. So the Secretary of State sounds like has been confronted with similar types of issues. I guess the residency requirement, are those similar to the age requirement? No, they're not, Your Honor, because what happens in cases about residency requirements or asking for additional proof of citizenship, for example, in Arizona is what's being litigated is the burden that those laws place, the constitutionality of those laws. Here, the U.S. Constitution says you have to be 35 years old to be President of the United States. That's the law. We're not revisiting that. The Secretary of State has not added a qualification to what one has to be to exercise a right to vote or to be President. She's merely reading the U.S. Constitution and enforcing it. Does the record show how does the Secretary of State know how old Ms. Minzy is? It's not alleged in the complaint, but the way the Secretary of State knows is that in doing the investigation to find out whether or not Ms. Minzy is generally recognized, which means things like does she have a campaign office in California? Is she on the ballot of any other state? Does she qualify for federal matching funds? It became clear that Ms. Minzy was 27 years old. The Secretary of State is required to publish a preliminary list, which she did on February 6, 2012, but did not have Ms. Minzy's name in it. Ms. Minzy's counsel wrote a letter to the Secretary of State demanding that she be put on the ballot, and in that letter, which is part of the supplemental excerpts of record and it was judicially noticed by the court, her counsel admits that she is 27 years old. So when she was excluded from the ballot, there is absolutely no dispute that Ms. Minzy was 27. The sole argument is whether the Secretary of State can exclude someone who is admittedly and undisputedly unqualified. Do you dispute whether this is moot? The court found that it was not moot because it falls into the repetition-evading review. Do you agree with that? I understand why it would lend itself to repetition-evading review, but this gets to another point, which is that plaintiffs did not actually bring an action for violation of the Elections Code, which is very much what they're suggesting here. And to do that, the Election Code specifies you bring a writ of mandate, and you have a specified time to do that. So I don't actually think plaintiffs can ever bring the kind of claim that they're bringing here. And the second point would be that by the time they moved for a preliminary injunction, the Secretary had already distributed the certified list to the 58 county officials who print the ballot. At that point, by code, she can't touch the ballot anymore. She can't add and cannot subtract names to it. So it was already too late by the time they brought their action for them to get the relief that they were seeking from the Secretary. Can I go back to your State authority issue? What is the specific statute that you're relying on? Is it the Election Code 6720? I'm sorry. The specific authority for generally recommending. For deleting her name, for not allowing her name to be on the ballot. Well, the code at issue is 6720. Yes. And you're relying on the discretion that goes with determining whether she's generally advocating and so forth? Yes, as well as looking at the Elections Code as a whole and the Government Code, which gives the Secretary of State significant power and authority to regulate elections. But there's no other State statute that you're relying upon? No. Very well. Thank you. Just briefly, in the 30 seconds that I have left, I want to explain that it was not actually the Secretary's position in Robinson that she had no authority to exclude an admittedly unqualified candidate. And just to be very, very clear, although it was undisputed that Senator McCain was born in Panama, the meaning of that was very much in dispute and required interpretation. Because he was born in the Panama Canal Zone in 1936 to two American-born parents, there was some question about whether or not he qualified as an American citizen. That obviously is a legal determination that was going to be made by someone other than the Secretary. But that case has – it would require investigation and interpretation. That's not the case here. Finally, I would just repeat that because the complaint is nothing more than boilerplate legal conclusions, and because all of these claims have to fail as a matter of law, I would just ask that this Court affirm the district court. Thank you.  Thank you. Thank you. In order of time, if you'd like to take a minute for rebuttal, you can take it. Just briefly, I know of no State or Federal court that has ever authorized the Secretary of State to interpret or enforce a qualifications provision of the United States Constitution for the office of the presidency or for Congress. That's a novel case that is presented here. In Storr v. Brown, the question was whether or not the disaffiliation provision could be utilized in terms of which party you could be associated with. So that provision has never been interpreted to be expanded past that to the actual problem. What happened with Elders Cleaver? I'm sorry, Your Honor? What happened with Elders Cleaver? The cases were all ended up unpublished. Mr. Cleaver ended up still running but not being on the ballot. He was 34. He actually would have been 35 within the time of the presidential election period. And the issue was left unresolved. But there were decisions, right? They were just not published. Yes, Your Honor. I just know that there was a denial of the petition for cert. Beyond that, I don't know of what happened. I haven't found the underlying records, Your Honor. Okay. Thank you. Thank you. The case is signed. It will stand submitted.
judges: Kozinski, O'scannlain, Murguia